# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3408-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

S.M.,

 Defendant-Appellant,

and

C.W.,

 Defendant.

_____

IN THE MATTER OF Co.W. and Ca.W.,

 Minors.

_____

Submitted February 7, 2019 – Decided August 22, 2019

Before Judges Whipple and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0271-17.

Ellen Jo Gold, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Charles M. Ouslander, Designated Counsel, on the brief).

PER CURIAM

Defendant S.M. (Sara)[1] appeals from the February 22, 2018 order of the Family Part finding that she abused and neglected two of her children. We affirm.

## I.

The key evidence adduced during the fact finding hearing is as follows: Sara is the mother of Ca.W. (Carley) and Co.W. (Connor). On the dates in

---

[1] We use initials and fictitious names to protect the family's privacy. R. 1:38-3(d)(12).

question, Carley was fifteen and Connor was seventeen. Sara also has an adult son, Cam. W. (Cameron), who was eighteen on the relevant dates.[2]

On March 24, 2017, Sara went to Florida for a two-week vacation with her boyfriend, A.N. (Arthur). The night before she left, Sara told Cameron he would be in charge of the minor children. The parties disputed whether Sara notified her children that she was going on vacation. At approximately 6:00 a.m. on the day she left, she sent a text message to her children stating, "I am on my way to Florida. All phones are on while I am gone. Make sure you tell one another where you are. Take care of your sister." Sara testified she informed her children of the trip well in advance of her departure and the text was a last minute goodbye because she was departing so early in the morning. The court concluded that whether Sara provided advance notice of her trip to her children was immaterial because

> there was an abysmal lack of communication from [Sara] to her children regarding the trip. Nowhere does she indicate that she provided her itinerary, airline information, where she was staying, or the exact departure and arrival times of her trip. She didn't even contact the child[ren] to tell them when she would be home.

---

[2] Defendant C.W. is the father of Sara's children. The couple is divorced. C.W. is not alleged to have abused or neglected the children. Prior to the events in question, he was deported to Jamaica after release from incarceration in Georgia.

The following night, Carley had a party at the family home without Sara's permission. More than one hundred people attended the event, which was publicized on Snapchat and featured a deejay. Attendees consumed alcohol and controlled substances. Cameron was at the movies when the party took place. Connor was in his room playing video games.

Eventually, police were called by neighbors. Responding officers arrested two people and dispersed the crowd. Connor called his mother when police arrived. Sara asked her friend M.B. (Mary) to go to the house. After speaking with an officer, Connor, and Mary, Sara was assured the party was over and decided to remain in Florida while, leaving the children at home. Although Sara testified that Mary agreed to periodically check in on the children, the court found "it highly unlikely that she ever stepped foot into the . . . home while [Sara] was away" but "may have driven past the home from time to time." The court rejected as entirely lacking in credibility Mary's testimony that she examined the house and the children's bedrooms on the night of the party and that everything appeared to be in order.

Sara and Arthur returned unannounced on the afternoon of April 5, 2017. They found two young women, one of whom Sara previously had advised Carley not to befriend because of her bad influence, and one of whom Sara did not

know, sprawled on the couch in pajamas. Sara called the police, who transported the two women to the police station. Sara and Arthur also went to the police station, where they met Carley, who had been taken to the station by a school resource officer. When asked, Carley said she let the two women stay overnight at the house because they had nowhere else to go. Sara did not press charges against the young women. Carley returned to school.

Once back home, Sara found the house to be in a state of disarray, with trash, cooked and uncooked food, dishes, cups, liquor bottles, and other debris strewn about. Sara packed all of Connor's clothes, videos, video equipment, and electronics into garbage bags, which she placed in the attic. The court found this was an act of punishment for Connor's involvement in the party. When Connor returned, he was angry. Arthur suggested Sara call the police. Instead, Sara directed Connor to clean his room.

A short time later, Carley arrived home. She and Sara began an argument in the kitchen. Sara splashed water in Carley's face and while in "a fit of rage," engaged in a physical confrontation with her daughter. Sara, a registered nurse, "pulled [Carley] into the hall near her bedroom so she could grab her nursing shears that were in the cabinet." Noting Sara's admission that she "was completely out of control," the court found Sara pulled Carley and cut her hair

A-3408-17T1

in an intentional "act of humiliation and intimidation." As the court explained, "[k]nowing how important [Carley's] hair is to her, [Sara] decided to mutilate the . . . feature that she loves the most." The court observed that following this incident Carley reported she would feel unsafe to return to her mother.

The court also found that during this encounter, Sara was "threatening and menacing" toward Carley, saying "I'm gonna kill you" and that she would slit the child's throat. The court found that Carley was in fear of physical harm during this incident and sustained physical injuries as a result of her mother's actions.

On April 6, 2017, the New Jersey Division of Child Protection and Permanency (Division) received a referral from the children's school expressing concern for their well-being. An investigation by the Division substantiated allegations of Sara's emotional abuse of both children, as well as her physical abuse of Carley. The investigation did not substantiate allegations of Sara's physical abuse of Connor or neglect of either child.

The Division implemented a safety protection plan requiring all contact between Sara and the children be supervised by Mary. Sara's adult daughter Cr.W. (Cheryl) later assumed that role. In addition, the Division filed a complaint in the Family Part, pursuant to N.J.S.A. 9:6-8.21(c), seeking care and

supervision of Carley and Connor. The Division alleged one act of physical abuse against Carley and ongoing emotional abuse of both children.

On June 13, 2017, the court granted the Division care and supervision of Carley and Connor with physical custody to remain with Sara. The court ordered Sara, Arthur, Carley, and Connor to undergo psychological evaluations, and Sara to receive anger management training and parenting classes.

The court held a four-day fact finding hearing on the allegations of abuse and neglect. The Division presented the testimony of its investigator and Dr. Anthony D'Urso, an expert in psychology at The Audrey Hepburn Children's House (AHCH), to which the family was referred for evaluation. Sara testified on her own behalf, and called Arthur (who was Sara's husband by the time of the hearing) and Mary as witnesses.

On February 22, 2018, the court issued an oral opinion, concluding the Division established by a preponderance of the evidence that Carley and Connor "suffered actual emotional abuse caused by their mother's explosive behavior, chronic conflict in the home, and limited insight into her shortcomings." In addition, the court concluded that the emotional abuse of Carley was caused by Sara's "yelling, intimidation and terroristic threats and humiliating by cutting of [Carley's] hair" after Sara's return from Florida.

A-3408-17T1

The court found credible the testimony of Dr. D'Urso that there is clinical support for the conclusion that Carley was emotionally and psychologically abused by Sara. The court accepted the expert's diagnoses of Carley having post-traumatic stress disorder and Connor having an adjustment disorder with mixed anxiety and depressed mood. The court noted that Sara's insistence that the haircutting incident was an isolated event "speaks volumes as to her lack of insight and lends further support to the findings of [AHCH] that [Sara] is emotionally unavailable to [her] children and that her children have been subjected to long term abuse."

In addition to the haircutting incident, the expert relied on the following to reach his diagnoses: (1) the children have poor relationships with Sara with little, if any, emotional attachment to their mother; (2) Sara has limited or no knowledge or ability to use any means of controlling her children other than corporal punishment; (3) Carley experiences intrusive memories, fearfulness, and emotional reactivity; (4) Connor suffers from food insecurity because Sara does not ensure that her children eat breakfast or dinner and often has limited food supplies in the home; (5) Connor witnessed Sara's attack on Carley but was too fearful to intervene because he feared Arthur would attack him; and (6) both Carley and Connor display behavior consistent with emotional trauma, including

8

Connor obsessively setting an alarm on his phone to sound in the middle of the night to cope with stress.

The court found the Division did not prove by a preponderance of the evidence that Sara physically abused Carley. The court concluded that the physical contact between Sara and Carley after Sara's return from Florida was an isolated event in what were extreme and trying circumstances for Sara. In addition, the court found Sara's conduct did not amount to excessive corporal punishment. Because no further intervention was deemed necessary, the court closed the matter.

This appeal followed. Sara raises the following arguments for our consideration:

> POINT I
>
> THE FACT FINDING DETERMINATION AS TO EMOTIONAL ABUSE SHOULD BE REVERSED AS THE UNCORROBORATED STATEMENTS OF THE MINORS WERE THE BASIS FOR THE COURT'S DECISION.
>
> POINT II
>
> THERE WAS INSUFFICIENT CREDIBLE EVIDENCE IN THE RECORD TO SUPPORT THE COURT'S CONCLUSION THAT DEFENDANT EMOTIONALLY ABUSED [CARLEY] AND [CONNOR].

In our review of an order finding abuse or neglect, we determine whether the trial court's decision was based on evidence supported by the record before the court. See N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 22 (2013) ("The Division bears the burden of proof at a fact-finding hearing and must prove present or future harm to a child by a preponderance of the evidence."). We will not disturb a trial court's factual findings "unless they are so wholly unsupportable as to result in a denial of justice." In re Guardianship of J.N.H., 172 N.J 440, 472 (2002) (quotations omitted).

Even when a party "allege[s] error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," deference must be accorded unless the court "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quotations omitted). This is because, "by virtue of its specific jurisdiction, the Family Part possess[es] special expertise in the field of domestic relations." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014) (alteration in original) (quotations omitted). "Nevertheless, the trial judge's findings are not entitled to that same degree of deference if they are

based upon a misunderstanding of the applicable legal principles." N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002).

Title Nine, N.J.S.A. 9:1-1 to 25-11, sets forth the controlling standards for adjudicating cases of abuse and neglect. N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 303 (2011). Title Nine's main precept is to protect children from circumstances and actions that threaten their welfare. G.S. v. Dep't of Human Servs., Div. of Youth & Family Servs., 157 N.J. 161, 176 (1999). In pertinent part, the statute defines "abused or neglected child," as one:

> whose parent or guardian . . . (1) inflicts or allows to be inflicted upon such child . . . protracted impairment of physical or emotional health . . . (4) or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(1) and (4)(b).]

A "minimum degree of care" does not refer to merely negligent conduct, but rather "to conduct that is grossly or wantonly negligent, but not necessarily

intentional." <u>T.B.</u>, 207 N.J. 305 (quoting <u>G.S.</u>, 157 N.J. at 178). "Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result." <u>G.S.</u>, 157 N.J. at 178. The essence of gross or wanton negligence is that it "implies that a person has acted with reckless disregard for the safety of others." <u>Id.</u> at 179.

Our review of the record in light of the applicable precedents leads us to affirm the court's decision for the reasons stated in its February 28, 2018 oral opinion. We add these comments. There is sufficient, credible evidence in the record supporting the court's determination, reached after it weighed the credibility of the witnesses, that Sara's failure to exercise a minimum degree of care resulted in Carley and Connor suffering actual emotional abuse. Sara admitted she was "completely out of control" when she dragged her daughter down a hallway, grabbed nursing shears, and cut her hair in an act of deliberate humiliation. Connor witnessed the event, but was fearful of intervening because he was afraid of physical attack by his mother's boyfriend. These acts were clearly emotionally traumatic to the children. The court found a contrary version events presented in the testimony of Sara and Arthur to lack credibility. We see nothing in the record warranting reversal of the court's fact findings.

In addition, the expert testimony of the psychological harm inflicted on the children by the haircutting event and other, ongoing acts by Sara was well supported and uncontradicted. The court weighed the credibility of the expert, detailed the basis on which he reached his diagnoses of the children, and found his opinions to be sound. That finding is entitled to our deference.

We do not agree with Sara's argument that the court's findings of fact were based on uncorroborated out-of-court statements by Carley and Connor. "[P]revious statements made by a child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). "The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). Here, the court considered the testimony of Sara, Arthur, the Division investigator, and Dr. D'Urso, as well as the children's out-of-court statements. The court determined that the credible evidence provided by the Division's witnesses, as well as Sara's admission of her "out of control" behavior toward Carley on the night she returned from Florida,

corroborated the children's out-of-court statements. That determination comports with N.J.S.A. 9:6-8.46(a)(4).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3408-17T1